**SMITH KRIVOSHEY, PLLC**
Yeremey O. Krivoshey (State Bar No. 295032)
166 Geary Street, Ste. 1500-1507
San Francisco, CA 94108
Phone: 415-839-7000
E-Mail: yeremey@skclassactions.com

**SMITH KRIVOSHEY, PLLC**
Joel D. Smith (State Bar No. 244902)
867 Boylston Street, 5th Floor, Ste. 1520
Boston, MA 02116
Phone: 617-377-7404
E-Mail: joel@skclassactions.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| ANDREA SIVAKOVA, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> AMERICAN HONDA MOTOR COMPANY, INC., <br><br> Defendant. | Case No. 2:24-cv-3354 <br><br> **CLASS ACTION COMPLAINT** <br><br> <u>JURY TRIAL DEMANDED</u> |

---

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

## **NATURE OF THE ACTION**

1.       Many automatic driving and safety features found in new cars today are the first steps toward fully autonomous cars.  Automatic emergency braking ("AEB") is one of those features.  Broadly speaking, AEB systems work by scanning the road for other vehicles, pedestrians, and objects and automatically applying the brakes if there is a threat of collision.  No car manufacturer wants to be left behind its competition when it comes to providing automated features like AEB.  Manufacturers comprising "more than 99% of the U.S. automobile market" voluntarily committed to outfitting "every new passenger vehicle with [AEB] by Sept. 1, 2022."[1] The problem is that car manufacturers rushed this feature to market when the technology is not yet ready and not yet safe.   That is what this case is about.

2.       The Honda AEB systems at issue here have a defect that causes them to falsely engage randomly, causing sudden, unintended braking (the "Sudden Unintended Braking Defect").  The Sudden Unintended Braking Defect causes the Class Vehicles to detect non-existent obstacles, which then automatically triggers the brakes and causing the Class Vehicles to abruptly slow down or come to a complete stop, sometimes in the middle of traffic.  Simply put, as a result of the Sudden Unintended Braking Defect, Honda's AEB systems are a safety hazard, not a safety feature.

3.       This particular class action involves all 2019-2022 MY Honda Insight and Honda Passport vehicles equipped with an AEB system ("the Class Vehicles").  Honda and the National Highway Traffic Safety Administration have received dozens of complaints about sudden unintended braking, including incidents involving crashes and injuries.  These incidents would have come as no surprise to Honda, because it was fully aware that the AEB systems installed in the

---

[1] https://www.iihs.org/news/detail/10-automakers-equipped-most-of-their-2018-vehicles-with-automatic-emergency-braking

Class Vehicles were prone to sudden unintended braking when it first put the Class Vehicles on the market.

## **PARTIES**

4.     Plaintiff Andrea Sivakova is domiciled in Massachusetts and may be referred to later in this complaint as a "Massachusetts Plaintiff." She owns a 2021 Passport Sport equipped with Honda's AEB system, which she purchased in Massachusetts. Before her purchase, Ms. Sivakova was never informed about the sudden, unintended braking defect. She would not have purchased the car or would not have purchased it on the same terms if she had known about the defect. Ms. Sivakova has experienced sudden, unintended braking in her vehicle numerous times.

5.     Ms. Sivakova intends to buy or lease new vehicles again in the future and would consider another Honda vehicle, but she is concerned that Honda would again conceal a known defect affecting that system. An injunction requiring Honda to take remedial steps with respect to the Sudden Unintended Braking Defect would therefore benefit Ms. Sivakova.

6.     Defendant American Honda Motor Company, Inc., is a California corporation with its headquarters and principal place of business in Torrance, California.

## **JURISDICTION AND VENUE**

7.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, and at least one member of the proposed class is citizen of state different from Defendant.

8.     This Court has personal jurisdiction over Defendant because it conducts substantial business and is headquartered in California. A substantial portion of the events giving rise to the claims alleged here occurred in this state.

---

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                2

9.      Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District.

## FACTUAL ALLEGATIONS

10.     At issue in this case are the 2019-2022 MY Honda Insight and Honda Passport vehicles sold in the United States and equipped with an AEB system. These are collectively referred to in this complaint as "Class Vehicles."

11.     There are approximately 250,712 Class Vehicles.

12.     The AEB systems in the Class Vehicles (described in more detail below) are all the same or substantially similar in all material respects. They used the same or substantially the same components, and received the same or substantially the same software updates. They all suffer from the same Sudden Unintended Braking Defect at issue in this case. The cause of the defect is the same for all Class Vehicles and available countermeasures, if any, are the same.

***Background on AEB Systems:***

13.     AEB systems have become a standard feature in most cars made today. Typically, they include one or more front-facing radar or lidar sensors, which may be paired with a front-facing camera positioned in front of the rear-view mirror. These components work together to scan the road ahead, attempting to identify potential obstacles that could cause a collision. If an obstacle is detected, the system will alert the driver and potentially apply light or strong brakes automatically.

14.     The technology is new, expensive, and not fully developed. To work correctly, the components and related software must perform complex analyses instantaneously, and do so in a package that is as small and lightweight as possible. As NHTSA has explained, the safety and reliability of AEB systems "depend[] heavily on the accuracy and timeliness of detection, which relies on the ***quality of the installed sensor, camera, or vision algorithm detecting targets***."

However, only a small handful of companies make the sensors and other components used for AEB systems, and many of the components they offer are simply not up to the task demanded of them.

15. In addition, car manufacturers face two, related business pressures when it comes to AEB systems. First, car manufacturers were in a years-long race to get AEB systems on the market, and to make them standard features in most cars by 2022. But the technology is not yet where it needs to be for AEB-equipped cars to be safe and reliable. At the same time, car manufacturers face strong temptation to use cheaper components, even if they are less reliable. Choosing a $60 radar over a $100 radar, for example, can save a manufacturer many millions of dollars. Cutting corners on AEB systems by installing unreliable components that are not capable of reliably performing the complex procedures asked of them, however, makes them unsafe.

### *Honda's AEB System and the Sudden Unintended Braking Defect:*

16. Honda calls its proprietary AEB system the "Collision Mitigation Braking System$^{tm}$ (CMBS)," which it says "is designed to assist drivers in avoiding a frontal collision—or reducing its effects if unavoidable." According to Honda, the CMBS system in Honda Insight and Passport vehicles "is one of the most sophisticated safety systems available." Much like other AEB systems, if Honda's CMBS system detects an obstacle in the road, it is intended to provide a visual and audible alert to the driver, and then if the driver takes no action, automatically apply the brakes. In practice, however, the visual and audio alerts often happen simultaneously with the automatic braking. As Honda has explained, "CMBS may not go through all three stages, and may automatically engage the final stage [i.e., full braking] if the system deems it necessary."

17. The AEB system used in the Class Vehicles is prone to sudden, unintended braking when there are no obstacles in the road, often referred to in the industry as "false activation."

18.     Since the Class Vehicles were first put on the market, Honda and NHTSA have received dozens of complaints about false activations, including three incidents that resulted in crashes and/or fires, and two injuries.

19.     Honda was also aware of all customer complaints that were sent to NHTSA.  All safety complaints made to NHTSA are transmitted or made available to Honda, who monitors them as part of Honda's online reputation management efforts and/or to identify potential defects in its vehicles.  Monitoring complaints to NHTSA is standard industry practice that serves as an early warning mechanism to spot defects that cause safety hazards, and Honda adheres to that practice.

20.     A few examples of customer complaints are quoted below.  There were many more complaints than those that are quoted here:

2019 Honda Insight, reported January 8, 2024:

> *I'm having two continuous, multiple incident,*[SIC] *problems that the dealership swears up and down do not exist. I have tried calling the dealership multiple times, and the national Honda customer service line. Problem number one, sudden, breaking while driving at highway speed with no vehicle or other objects in front of me….*

2019 Honda Insight, reported June 2, 2022:

> *I was driving down the street and a car slowed down way in front of me. While I was braking my automatic braking system turned on and brought me to a complete stop. This caused my car to get hit from the back. The automatic braking does not slow down the car, it brings the car to a complete stop. Another incident, I was driving on the highway with nothing was in front of me and the brake signal started flashing and slowing the car down.*

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                5

2019 Honda Insight, reported February 28, 2022:

> *Driving on the highway in the evening with no obstruction ahead of the vehicle, the "Automatic Emergency Braking" system engaged, giving an audible alert, visual alert, and applied braking enough to accelerate the car from 65 mph to 40 mph. No one was behind us luckily so there was no crash or injury but there easily found have been.*

2020 Honda Insight, reported March 10, 2022:

> *I have had 2 occasions when I experienced inadvertent spontaneous braking. Both times there was no vehicle in front of me. Both times the car stopped completely while driving in the city between 25 to 35mph. Fortunately there was no vehicle behind me either time and I did not sustain any injuries.*

2020 Honda Insight, reported February 16, 2020:

> *In 3 instances the emergency braking system has activated when the car was being driven on the freeway and the lane was curving with no obstacles in front of the car in the lane but a semi truck in the next lane over in one instance and cars in the next lane over in the other instances.*

2021 Honda Insight, reported September 2, 2023:

> *This has been happening with my two honda cads* [SIC]. *I currently have Honda 2023 CRV and 2021 Honda Insight. the Collison Mitigation Braking System brakes really hard for no reason.*

2019 Honda Passport, reported March 5, 2024:

> *My Honda Passport will trigger false forward collision alarms randomly, and for no reason. No obstructions are visible most of the time recently! As the BRAKE warning appears, the steering wheel vibrates and a quick braking jabs causing panic as if the brakes are*

*fully engaged then it releases. This happens for no apparent reason. It is VERY distracting and if the brakes do apply very quickly, serious injury and damage can occur. This has happened multiple multiple [SIC] 10+ times.*

2021 Honda Passport, reported October 16, 2023:

*The forward collision warning comes on for no reason and brakes are getting applied for no reason. Very dangerous and can cause a rear end crash.*

21.     The causes of the Sudden Unintended Braking Defect are the same for all of the Class Vehicles: namely, Honda's CMBS system is technologically underdeveloped and relies on cheap components that are unable to reliably perform the one job they are intended to do: namely, adequately differentiate common road features with true obstacles that warrant braking activation.

22.     Honda is currently investigating the Sudden Unintended Braking Defect in the Class Vehicles and treats it as a collective problem with a common root.

23.     Honda also knows that the Sudden Unintended Braking Defect poses serious safety risks.  When earlier Honda models were plagued by similar problems, Honda admitted that the problem endangered drivers and recalled the vehicles.  With the current Class Vehicles, Honda has issued no recall, even though it is aware that the problems are substantially similar to those that prompted the earlier recalls.

**Honda Knew About The Sudden Unintended Braking Defect When It First Put The Class Vehicles On The Market**

24.     The complaints about false activations in the Class Vehicles did not come as a surprise to Honda.  To the contrary, Honda anticipated that it would receive complaints because it knew about the Sudden Unintended Braking Defect before it put the Class Vehicles on the market.

---

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                    7

25.     Honda has known for years that autonomous braking systems are at risk of object detection problems that lead to false activations and abrupt braking where no potential collision is imminent.  Honda has addressed the same issue ever since it first began implementing automatic braking systems.

26.     In March 2016, Honda and its competitors in the U.S. market jointly agreed to equip most light vehicles with AEB systems by September 2022. Despite supporting the plan, however, automakers knew that the timeline was aggressive, and that the technology was not yet up to the task.  Honda knew with certainty that, based on the state of the technology, customers would experience false activations notwithstanding extensive testing.

27.     Honda decided to use its customers to essentially (and unwittingly) beta-test AEB technology under real-world driving conditions, hoping that doing so would allow the technology to reach a sufficiently developed state at some point in the future.

28.     By 2019, it was known in the industry—including Honda—that the technology behind AEB systems still had a long way to go in terms of reliably detecting road obstacles while avoiding false activations.  Common roadside features like metal guardrails or overhead structures continued to confound many manufacturers' systems, including Honda's AEB system.  Installing more costly and effective sensors and data processing components was one available option for reducing false activations—but that was not an option Honda was willing to try.

29.     Every AEB-equipped car that Honda has introduced into the market has struggled with false activation problems.  Honda conducted three safety recalls in 2015 when several of its models were experiencing false activations.  Honda issued a series of Technical Service Bulletins ("TSBs") aimed at false activations, including several in 2017 and 2018.  And while the affected cars were equipped with earlier iterations of the technology in the Class Vehicles, Honda's lengthy experience with false activations in its AEB system, combined with the minimal

progress in developing the technology, caused Honda to know with certainty that false activations would be a problem with the Class Vehicles too.

30.     In particular, when Honda first placed the Class Vehicles on the market, Honda knew that the technology was still undeveloped generally, and knew that the cheaper and unreliable components it installed in the Class Vehicles' AEB system were not capable of performing as intended.  Put another way, there was no reason to expect that the AEB systems in the Class Vehicles would perform meaningfully better than any of Honda's earlier cars, because as common sense dictates: if you continue to do things the same things the same way, you can only expect to get the same result.

31.     Honda also would have known about the risk of false activations as a result of pre-release testing, which includes driving the vehicles for many miles and under many different road conditions.  Importantly, Honda knew from past experience that certain common road conditions are often associated with false activations, like railroad tracks, metal guardrails, sidewalk postboxes, metal bridges, and parking lots.  Based on past experience and industry knowledge, Honda's testing would have included driving near such road conditions to determine whether false activations were a problem.  And when it comes to the Class Vehicles, they *are* in fact a problem.

32.     Once sales of a vehicle model begin, Honda monitors a variety of sources of information to detect signs of defects.  These sources of information include warranty claim data, customer complaints to Honda, complaints to NHTSA, replacement part data, and field reports.  Honda knows that for every complaint made, there is a statistical likelihood that there were many more unreported incidents, and Honda makes projections about the likely manifestation rate and future warranty claims based on the number of known complaints.

33.     The customer complaints about the MY 2019 Passports and Insight vehicles would have put Honda on notice of the defect and contributed to its pre-

sale knowledge of the defect with respect to the later MY vehicles, because the AEB system in all of the Class Vehicles is the same or substantially similar in all material respects.  The number of complaints for all MY Class Vehicles was unusually high relative to the total population of vehicles sold or leased.  The fact that so many drivers made similar complaints indicated that the complaints were not the result of user error or anomalous incidents, but instead a systemic problem with the Class Vehicles.  The reports and complaints from drivers were similar enough to put Honda on notice that the incidents described were the result of a defect, and that the Class Vehicles were experiencing unusually high levels of complaints about the AEB Systems.

34.    Honda's pre-sale knowledge of the Sudden Unintended Braking Defect is also evidenced by admissions in the owner's manuals provided with each Class Vehicle.  Honda acknowledged the Sudden Unintended Braking Defect in the small print buried in the owner's manuals of each of the Class Vehicles.

35.    Specifically, each of the owner's manuals states that the system might activate "when there is no vehicle ahead," and identifies a lengthy list of road conditions that will trigger a false activation, like:

- ✓ driving through curves;
- ✓ driving "under low or narrow bridges";
- ✓ driving over speed bumps, steal plates, or train tracks;
- ✓ driving past traffic signs or guard rails.

36.    These are all commonplace road conditions that drivers experience multiple times a day.

37.    Honda also knows that car purchasers do not typically review the manual's fine print before purchasing their car.  Here, the disclosure about false activations was buried somewhere around pages 440-500 of the owner's manual, depending on the particular model year.  Finding such a disclaimer would be like

finding a needle in a haystack—assuming someone had a reason to look for it in the first place.

38.     Notwithstanding the AEB Systems being touted as a safety feature, Honda never referenced or otherwise directed potential purchasers to this hidden disclaimer.  The Sudden Unintended Braking Defect was never disclosed on Honda's website.  It was never disclosed on Monroney labels.  It was never disclosed in television or internet advertisements.  It was never disclosed in sales brochures offered by dealers.  Honda never advised dealers to disclose the defect.  At best, Class members would only see the disclosure in the owner's manuals after they purchased or leased the vehicles and if they happened to stumble upon it when reading the owner's manual.

39.     Nor do the disclosures say anything about the potential severity of the problem, or how hard the braking may occur.  There is no warning that false activations may increase the risk of a rear-end collision.

40.     In short, although the disclosures described in the owner's manuals did nothing to adequately warn people about the Sudden Unintended Braking Defect, the fact that Honda alluded to the AEB systems' propensity for false activations demonstrates it knew about the defect before Honda began marketing and selling the Class Vehicles with the AEB systems.

***Honda Had A Duty To Adequately Disclose The Sudden Unintended Braking Defect***

41.     Honda had – and continues to have – a duty to fully disclose the true nature of the Sudden Unintended Braking Defect to Class Vehicle owners, because the defect poses an unreasonable safety hazard; because the Honda had and continues to have exclusive knowledge or access to material facts about the Class Vehicles' AEB systems that were and are not known to or reasonably discoverable by class members; and because Honda actively concealed the defect from its customers at the time of purchase or repair and thereafter.

42.   Honda also had a duty to disclose because it made and continues to make partial representations about the AEB systems on Monroney window stickers, which are affixed to the window of every Class Vehicle at the time of sale, and which uniformly tout its AEB system as a "safety" feature without disclosing the hazards caused by the Sudden Unintended Braking Defect.

**Injunctive Relief**

43.   In addition to other relief, Plaintiff seeks the following injunctive relief, which aims at preventing injury to current and future drivers of Honda vehicles:

(a)   Requiring Honda to implement a service campaign to do one of the following remedial measures: (1) permanently deactivate the AEB system; or (2) replace the system with a suitable and safe alternative;

(b)   Requiring Honda to publicize the full extent of its knowledge about the Sudden Unintended Braking Defect on its website, sales brochures, social media channels, YouTube channel, mobile apps, print mailers, and dealership communications.

(c)   Reforming Honda's warranty to ensure that dealerships will repair the defect for free.

## CLASS ALLEGATIONS

44.   **Class Definition**: Plaintiff brings this action on behalf all people the following classes and subclasses:

Nationwide class: all people in the United States who purchased or leased a Class Vehicle from a Honda-authorized dealership.

Massachusetts class: all people who purchased or leased a Class Vehicle from a Honda-authorized dealership in Massachusetts.

45.   Subject to additional information obtained through further investigation and discovery, the foregoing class definitions may be expanded or narrowed by amendment or in the motion for class certification, including through

the use of multi-state subclasses to account for material differences in state law, if any.

46.     Excluded from the putative classes are Defendant and any entities in which Defendant have a controlling interest, Defendant's agents and employees, the judge to whom this action is assigned, members of the judge's staff, and the judge's immediate family.  Also excluded are any claims for personal injury.

47.     ***Numerosity.***  Members of the Class are so numerous that their individual joinder herein is impracticable.  On information and belief, each Class or Subclass includes thousands of consumers.  The precise number of Class Members and their identities are unknown to the Plaintiff at this time but may be determined through discovery.  Class Members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant or other means.

48.     ***Commonality and Predominance***.  Common questions of law and fact exist as to all Class Members and predominate over questions affecting only individual Class Members.  Common legal and factual questions include, but are not limited to:

(a)     Whether Honda knew or should have known of the Sudden Unintended Braking Defect, and if so, when it discovered the defect;

(b)     Whether knowledge of the Sudden Unintended Braking Defect would be important to a reasonable person, because, among other things, it poses an unreasonable safety hazard and impacts the central functionality of Class Vehicles;

(c)     Whether Honda failed to disclose and concealed the existence of the Sudden Unintended Braking Defect from potential customers;

(d)    Whether the Court may enter an injunction designed to reduce the risk of future harm to Plaintiff and class members;

(e)    Whether Honda's conduct, as alleged herein, violates the consumer protection laws asserted here;

49.    ***Typicality.***  Plaintiff's claims are typical of the claims of the Classes in that Plaintiff and the Classes sustained damages as a result of Defendant's uniform wrongful conduct, based upon Defendant's failure to inform Plaintiff and all others similarly situated that its Product can be dangerous.

50.    ***Adequacy***.  Plaintiff will fairly and adequately protect the interests of Class members.  Plaintiff has retained counsel that is highly experienced in complex consumer class action litigation, and Plaintiff intends to vigorously prosecute this action on behalf of the Class.  Plaintiff has no interests that are antagonistic to those of the Class.  Plaintiff has no past or present financial, employment, familial, or other relationship with any of the attorneys in this case that would create a conflict of interest with the proposed class members.

51.    ***Superiority***.  A class action is superior to all other available methods for the fair and efficient adjudication of this controversy for, *inter alia*, the following reasons: prosecutions of individual actions are economically impractical for members of the Classes; the Classes are readily definable; prosecution as a class action avoids repetitious litigation and duplicative litigation costs, conserves judicial resources, and ensures uniformity of decisions; and prosecution as a class action permits claims to be handled in an orderly and expeditious manner.

52.    Defendant has acted or failed to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief with respect to the Classes as a whole.

53.    Without a class action, Defendant will continue a course of action that will result in further damages to the Plaintiff and Members of the Classes and will likely retain the benefits of its wrongdoing.

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED          14

## COUNT I

**Violations of California's Unfair Competition Law ("UCL")**
**Cal. Bus. & Prof. Code §§ 17200, *et seq.***

54.     Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

55.     Plaintiff brings this cause of action individually and on behalf the nationwide class and each of their respective state subclasses.

56.     California Business & Professions Code Section 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

57.     Defendant acted with knowledge and intent.

58.     Plaintiff alleges a claim under all three prongs of the UCL.

59.     As alleged above, Defendant engaged in fraudulent conduct that had the tendency or capacity to deceive or confuse reasonable consumers.

60.     Defendant's conduct also constitutes "unfair" business acts and practices within the meaning of the UCL, in that its conduct was injurious to consumers, offended public policy, and was unethical and unscrupulous. Defendant's violation of consumer protection and unfair competition laws resulted in harm to consumers.

61.     Plaintiff also alleges a violation under the "unlawful" prong of the UCL because Defendant's conduct violated consumer protection laws and the common law as set forth herein.

62.     As a direct and proximate result of Defendant's unfair and deceptive practices, Plaintiff and the other members of the Class have suffered and will continue to suffer out-of-pocket losses.

63.     Plaintiff and class members have suffered an injury in fact resulting in the loss of money and/or property as a proximate result of the violations of law and wrongful conduct of Defendant alleged herein, and they lack an adequate

remedy at law to address the unfair conduct at issue here. Legal remedies are inadequate because they are not equally prompt and certain and in other ways efficient as equitable relief. Damages are not equally certain as restitution because the standard that governs restitution is different than the standard that governs damages. Hence, the Court may award restitution even if it determines that Plaintiff fails to sufficiently adduce evidence to support an award of damages. Damages and restitution are not the same amount. Unlike damages, restitution is not limited to the amount of money defendant wrongfully acquired plus the legal rate of interest. Equitable relief, including restitution, entitles a plaintiff to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize. Legal claims for damages are not equally certain as restitution because claims under the UCL entail few elements. In short, significant differences in proof and certainty establish that any potential legal claim cannot serve as an adequate remedy at law.

64.    Equitable relief is appropriate because Plaintiff may lack an adequate remedy at law if, for instance, damages resulting from their purchase of the Product is determined to be an amount less than the premium price of the Product. Without compensation for the full premium price of the Product, Plaintiff would be left without the parity in purchasing power to which they are entitled.

65.    Plaintiff seeks all relief available under the UCL.

## COUNT II
### Violations of California's Consumer Legal Remedies Act ("CLRA")
### Cal. Civ. Code §§ 1750, *et seq.*

66.    Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

67.    Plaintiff brings this cause of action individually and on behalf the nationwide class and each of the state subclasses.

68.    Defendant is a "person" as defined by California Civil Code

§ 1761(c).

69.     Plaintiff and the other Class members are "consumers" within the meaning of California Civil Code § 1761(d).

70.     For the reasons alleged above, Defendant violated California Civil Code § 1770(a)(5)(7) and (9).

71.     Plaintiff provided pre-suit notice of the claims asserted under the CLRA, in compliance with all of the CLRA's requirements.

72.     Defendant's unfair and deceptive acts or practices occurred repeatedly in Defendant's trade or business.

73.     Defendant acted with knowledge and intent.

74.     As alleged above, Defendant engaged in conduct that had the tendency or capacity to deceive or confuse reasonable consumers.

75.     With respect to the CLRA claim, Plaintiff alleges in the alternative that they lack an adequate remedy at law for the reasons already alleged above in connection with the UCL claim.

76.     As a result of Defendant's misconduct, Plaintiff and other Class members have suffered monetary harm.

77.     Plaintiff seeks all available relief under this cause of action, except for damages.  Plaintiff reserves the right to seek damages in a later amended complaint.

## COUNT III
### Violation of Song-Beverly Consumer Warranty Act
### for Breach of Implied Warranty, Cal. Civ. Code § 1790, *et seq.*

78.     Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

79.     Plaintiff brings this cause of action individually and on behalf the nationwide class and each of the state subclasses.

80.    Class Vehicles are "consumer goods" and Plaintiff and class members are "buyers" within the meaning of Cal. Civ. Code § 1791.

81.    Honda is a "manufacturer," "distributor," or "retail seller" under Cal. Civ. Code § 1791.

82.    The implied warranty of merchantability included with the sale of each Class Vehicle means that Honda warranted that each Class Vehicle (a) would pass without objection in trade under the contract description; (b) was fit for the ordinary purposes for which the Class Vehicle would be used; and (c) conformed to the promises or affirmations of fact made on the container or label.

83.    The Class Vehicles would not pass without objection in the automotive trade because they contain the above-described Defect, which also makes them unfit for the ordinary purpose for which a Class Vehicle would be used.

84.    The Class Vehicles are not adequately labeled because their labeling fails to disclose the Defect and does not advise the members of the proposed California Class of the existence of the danger prior to experiencing failure firsthand.

85.    Honda's actions have deprived Plaintiff and the members of the proposed California Class of the benefit of their bargains and have caused Class Vehicles to be worth less than what Plaintiff and other members of the proposed California Class paid.

86.    As a direct and proximate result of Honda's breach of implied warranty, members of the proposed California Class received goods whose condition substantially impairs their value. Plaintiff and members of the proposed California Class have been damaged by the diminished value of their Class Vehicles.

87.    Under Cal. Civ. Code §§ 1791.1(d) and 1794, Plaintiff and members of the proposed California Class are entitled to damages and other legal and

equitable relief, including, at their election, the right to revoke acceptance of Class Vehicles or the overpayment or diminution in value of their Class Vehicles. They are also entitled to all incidental and consequential damages resulting from Honda's breach, as well as reasonable attorneys' fees and costs.

88.    Plaintiff seeks all available relief under this cause of action.

## COUNT VI
### Violations of the Mass. Gen. Laws Chapter 93A, § 2

89.    Plaintiff repeats and re-allege all previous paragraphs, as if fully included herein.

90.    The Massachusetts Plaintiff brings this claim on behalf of the Massachusetts subclass.

91.    Massachusetts law prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws Ch. 93a, § 2.

92.    Plaintiff, members of the Massachusetts Class, and Defendant are "persons" within the meaning of Mass. Gen. Laws Ch. 93a, § 1(a).

93.    Defendant is engaged in "trade" or "commerce," within the meaning of Mass. Gen. Laws Ch. 93A, § 2.

94.    The Products constitute property under Mass. Gen. Laws Ch. 93A.

95.    Defendant engaged in one or more of the following unfair or deceptive acts or practices as prohibited by Mass. Gen. Laws Ch. 93A, § 2:

   a.    Misrepresenting the approval or certification of goods;

   b.    Representing that goods have sponsorship, approval, characteristics, uses, benefits, or quantities which they do not have;

   c.    Representing that goods are of a particular standard, quality, or grade, if they are of another;

   d.    Disparaging the goods, services, or business of another by false or misleading representation of fact;

   e.    Advertising goods with intent not to sell them as advertised;

f.      Engaging in other conduct which created a likelihood of confusion or of misunderstanding;

g.      Using or employing deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression, or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the advertisement and sale of the Products, whether or not any person has in fact been misled, deceived or damaged thereby; and

h.      Representing that goods have been supplied in accordance with a previous representation when they have not been.

96.    Defendant's acts and omissions are unfair in that they (1) offend public policy; (2) are immoral, unethical, oppressive, or unscrupulous; and (3) cause substantial injury to consumers. Defendant has, through knowing, intentional, material omissions, sold mislabeled Products.

97.    Defendant's acts and omissions are also unfair in that they cause substantial injury to consumers far in excess of any conceivable benefit; and are injuries of a nature that they could not have been reasonably avoided by consumers.

98.    Defendant's foregoing unfair methods of competition and unfair or deceptive acts or practices, including its omissions, were and are committed in its course of trade or commerce, directed at consumers, affect the public interest, and injured Plaintiff and Class members.

99.    Plaintiff and the members of the Massachusetts Class have suffered injury in fact, including economic injury, and actual damages resulting from Defendant's material omissions and misrepresentations because, *inter alia*, they lost money when they purchased the Class Vehicles and/or paid an inflated purchase price for them.

100.    Defendant knew, should have known, or was reckless in not knowing, that the Class Vehicles were defective.

101.   Defendant had a duty to disclose the defect at issue here because Defendant had knowledge of the true facts related to the Class Vehicles before marketing and selling them.

102.   As a direct and proximate result of Defendant's unfair methods of competition and unfair or deceptive acts or practices, Plaintiff and the members of the Massachusetts Class have incurred damages and are entitled to recover actual damages to the extent permitted by law, including class action rules, in an amount to be proven at trial.

103.   Plaintiff and the members of the Massachusetts Class have suffered ascertainable losses, which include but are not limited to, the costs they incurred paying for a product which was not the one that had been represented to them.

104.   Plaintiff seeks all available relief under this cause of action.

**COUNT VII**
**Breach of Implied Warranty**

105.   Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

106.   Each Plaintiff brings this cause of action individually and on behalf of their respective state subclasses against Defendant.

107.   Each Plaintiff asserts this cause of action under the laws of the state where they are domiciled.

108.   Defendant, as the designer, manufacturer, marketer, distributor, and/or seller of the products at issue, impliedly warranted that they would pass without objection in trade under the contract description; was fit for the ordinary purpose for which the Class Vehicles would be used; and conformed to the promises or affirmations of fact made on the container or label.

109.   Defendant breached its warranty implied because the Class Vehicles could not pass without objection in the trade under the contract description, they were not adequately labeled because there was no disclosure of the defect at issue;

and they are unfit for their ordinary purpose.  As a result, Plaintiff and members of the Classes did not receive the goods as impliedly warranted by Defendant to be merchantable.

110.   Plaintiff and Members of the Classes purchased the Class Vehicles in reliance upon Defendant's skill and judgment and the implied warranties of fitness for the purpose.

111.   The Class Vehicles were defective when it left the exclusive control of Defendant.

112.   Plaintiff and class members did not receive the goods as warranted.

113.   As a direct and proximate cause of Defendant's breach of the implied warranty, Plaintiff and class members have been injured and harmed because: (a) they would not have purchased the products on the same terms if they knew that the Product was dangerous; and (b) the Product does not have the characteristics, uses, or benefits as promised by Defendant.

114.   Plaintiff seeks all available relief under this cause of action.

<u>**COUNT VIII**</u>
**Unjust Enrichment**

115.   Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

116.   Each Plaintiff brings this cause of action individually and on behalf of their respective state subclasses against Defendant.

117.   Each Plaintiff asserts this cause of action under the laws of the state where they are domiciled.

118.   To the extent required, Plaintiff asserts this cause of action in the alternative to legal claims, as permitted by Rule 8.

119.   The unjust enrichment claims are premised on Honda's pre-sale activities and are unrelated to Honda's post-sale obligations to provide repairs.

120.   Plaintiff and the class members conferred a benefit on Defendant in the form of the gross revenues Defendant derived from the money they paid to Defendant.

121.   Defendant knew of the benefit conferred on it by Plaintiff and the Class Members.

122.   Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff's and the Class Members' purchases of the Class Vehicles, which retention of such revenues under these circumstances is unjust and inequitable because Defendant omitted that the Product was dangerous.  This caused injuries to Plaintiff and Members of the Classes because they would not have purchased the Product or would have paid less for them if the true facts concerning the Product had been known.

123.   Defendant accepted and retained the benefit in the amount of the gross revenues it derived from sales of the Class Vehicles to Plaintiff and the Class Members.

124.   Defendant has thereby profited by retaining the benefit under circumstances which would make it unjust for Defendant to retain the benefit.

125.   Plaintiff and the Class Members are, therefore, entitled to restitution in the form of the revenues derived from Defendant's sale of the Class Vehicles.

126.   As a direct and proximate result of Defendant's actions, Plaintiff and the Members of the Classes have suffered in an amount to be proven at trial.

127.   Putative class members have suffered an injury in fact and have lost money as a result of Defendant's unjust conduct.

128.   Putative class members lack an adequate remedy at law with respect to this claim and are entitled to non-restitutionary disgorgement of the financial profits that Defendant obtained as a result of its unjust conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seek judgment against Defendant, as follows:

a.  For an order certifying the classes alleged in this complaint, and naming Plaintiff as the representatives of those classes;

b.  For an order declaring Defendant's conduct violates the statutes referenced herein;

c.  For an order finding in favor of Plaintiff and class members on all counts asserted herein;

d.  For actual, compensatory, statutory, and/or punitive damages in amounts to be determined by the Court and/or jury;

e.  For prejudgment interest on all amounts awarded;

f.  For an order of restitution and all other forms of equitable monetary relief;

g.  For injunctive relief as pleaded or as the Court may deem proper; and

h.  For an order awarding Plaintiff and class members their reasonable attorneys' fees, expenses, and costs of suit.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all claims so triable.

Dated:  April 23, 2024                    Respectfully submitted,

                                         /s/   Joel D. Smith

                                         **SMITH KRIVOSHEY, PLLC**
                                         Joel D. Smith (State Bar No. 244902)
                                         867 Boylston Street, 5th Floor, Ste. 1520
                                         Boston, MA 02116
                                         Phone: 617-377-7404
                                         E-Mail:  joel@skclassactions.com

                                         **SMITH KRIVOSHEY, PLLC**
                                         Yeremey O. Krivoshey (State Bar No. 295032)
                                         166 Geary Street, Ste. 1500-1507
                                         San Francisco, CA 94108
                                         Phone: 415-839-7000

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

E-Mail:
yeremey@skclassactions.com

*Attorneys for Plaintiff*